## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA,**                   CIVIL ACTION
*ex rel*, **TRECI MCNEIL, ET AL.**

**VERSUS**                                     **No. 14-2247**
**c/w 15-877, 15-297,**
**15-1445, 16-15440**
**REF: ALL CASES**

**TARUN JOLLY, ET AL.**                           SECTION I

## ORDER & REASONS

Before the Court are motions[1] for attorneys' fees, costs, and expenses filed by Treci McNeil ("McNeil"), Lindsey Lawson ("Lawson") and Sheldon Green ("Green"), Bradley Church ("Church"),[2] and Philip Bergeron ("Bergeron"). For the following reasons, McNeil's motion is granted in part and denied in part, Lawson and Green's motion is denied, Church's motion is denied, and Bergeron's motion is granted in part and denied in part.

## I.

Between 2014 and 2015, McNeil, Lawson and Green, Church, Bergeron, and Kevin Outerbridge ("Outerbridge") (collectively, "relators") brought separate *qui tam* actions against, *inter alia*, defendants Tarun Jolly, M.D. ("Jolly"), Barry Griffith ("Griffith"), Patrick Ridgeway ("Ridgeway"), and UTC Laboratories, Inc., a/k/a RenRX

---

[1] R. Doc. Nos. 55, 57, 58 & 59.
[2] Church is referred to as "Doe" in his motion. R. Doc. No. 58.

("UTC") for alleged violations of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), and the Physician Self-Referral Law ("Stark Act"), 42 U.S.C. § 1395nn.[3]

The relators claimed that the defendants offered and paid remuneration to physicians and other individuals to induce the ordering of medically unnecessary pharmacogenetic clinical laboratory tests, and submitted false claims to the Medicare program for reimbursement of such tests.[4] Bergeron filed his *qui tam* action in the United States District Court for the Southern District of New York against, *inter alia*, Jolly, Griffith, Ridgeway, and UTC, and his case was transferred to this district in 2016.[5] McNeil filed her *qui tam* action in this district against, *inter alia*, UTC and Jolly.[6] Lawson and Green filed their *qui tam* action in this district against UTC and another defendant who is not a party to this matter.[7] Church filed his *qui tam* action in this district against UTC.[8] Outerbridge filed his *qui tam* action in this district against UTC and Jolly.[9]

---

[3] *See* R. Doc. No. 55-4, at 2–3. Outerbridge has not moved for attorneys' fees, costs, and expenses.

[4] *See id.*, at 2.

[5] Bergeron first filed his action against UTC and Syntactx, LLC on April 8, 2014. No. 2:16-cv-15440, R. Doc. No 1. He filed a first amended complaint, adding claims against Novitas Solutions, Inc., General Genetics Corporation, and Companion Dx Reference Lab, LLC. No. 2:16-cv-15440, R. Doc. No. 1-4. Jolly then filed a second amended complaint, adding claims against defendants Jolly, Griffith, and Ridgeway. No. 2:16-cv-15440, R. Doc. No. 1-7. Syntactx, LLC, Novitas Solutions, Inc., General Genetics Corporation, and Companion Dx Reference Lab, LLC are not a part of the global settlement agreement or parties to this matter.

[6] R. Doc. No. 1. The other defendants named in McNeil's complaint—Blue Ox Medical Innovations, LLC, Ryan Dienst, and Tanya Thomas—are not a part of the global settlement agreement or parties to this matter.

[7] No. 2:15-cv-00297, R. Doc. No. 1.

[8] No. 2:15-cv-00877, R. Doc. No. 1.

[9] No. 2:15-cv-01445, R. Doc. No. 1.

Pursuant to 28 U.S.C. § 3730(b)(2), a copy of each relator's complaint and written disclosure of substantially all material evidence and information the relator possessed was served on the government. The government elected to intervene and proceed in each of the relator's actions, and it began investigations into the allegations raised in the relators' complaints.

After years of investigation, in September 2019, a global settlement agreement was reached between the government, the relators, and defendants Jolly, Griffith, Ridgeway, and UTC.[10] Under the terms of the global settlement agreement, Jolly, Griffith, Ridgeway, and UTC were required to pay to the United States their respective portions of the total settlement amount—$500,000 by Jolly, $250,000 by Griffith, $250,000 by Ridgeway, and $42,109,358.68 by UTC.[11]

---

[10] R. Doc. No. 55-4.

[11] R. Doc. No. 55-4, at 6–7; R. Doc. No. 70-2, at 2. UTC's portion of the settlement amount included a "Suspended Amount" in Medicare payments to UTC that the Centers for Medicare & Medicaid Services retained based on credible allegations of fraud against UTC. *See* R. Doc. No. 55-4, at 5.

On October 4, 2019, the government filed, in each of the relator's actions, a notice of intervention in part for purposes of settlement and declination in part. R. Doc. No. 45; R. Doc. No. 38, No. 2:15-cv-00877; R. Doc. No. 32, No. 2:15-cv-00297; R. Doc. No. 31, No. 2:15-cv-01445; R. Doc. No. 28, No. 2:16-cv-15440. In light of the global settlement agreement and for the purpose of effectuating and formalizing that resolution, the government advised the Court of its decision to intervene with respect to certain civil claims against defendants Jolly, Ridgeway, Griffith, and UTC. R. Doc. No. 45, at 2–3. The government also advised the Court that it declined intervention with respect to all other claims brought by the relators in their individual *qui tam* actions, as well as with respect to the remaining defendants in those actions. *Id.* at 3. Those defendants were named in the relators' *qui tam* actions, but they are not parties to this matter or the global settlement agreement.

Pursuant to the global settlement agreement, the relators agreed to release Jolly, Griffith, Ridgeway, and UTC from, *inter alia*, liability to all relators arising from the relators' *qui tam* actions, "excluding claims under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs."[12] The agreement also provided that the government and the relators agree that "they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relators should receive of any proceeds of the settlement of their claim(s), and that no agreements concerning Relator share have been reached to date."[13]

In January 2020, the government and the relators entered into a settlement agreement ("Relators Settlement Agreement") awarding shares of the proceeds from the global settlement agreement to Bergeron and McNeil.[14] Specifically, Bergeron was awarded $8,211,324.94 of the settlement amount agreed upon by UTC, Ridgeway, Griffith, and the government, and McNeil was awarded $110,000 of the $500,000 settlement amount agreed upon by Jolly.[15] The Relators Settlement Agreement did not provide for awards to Lawson, Green, Church, or Outerbridge.[16]

---

[12] R. Doc. No. 55-4, at 9. Recital K of the global settlement agreement also stated that the relators "claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs." *Id.* at 5.

[13] *Id.* at 9.

[14] R. Doc. No. 70-2.

[15] *Id.* at 2.

[16] The Relators Settlement Agreement stated that the government "intends to award a share only to Relators Bergeron and McNeil, and Relators do not intend to contest such an award." *Id.*

## II.

The False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, imposes liability on those who defraud the government with false or fraudulent claims for payment or approval.[17] *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Under the *qui tam* provisions of the FCA, a private citizen—i.e., a relator—with special knowledge of fraud against the government may bring an action in the name of the government.[18] *United States v. U.S. ex rel. Thornton*, 207 F.3d 769, 771 (5th Cir. 2000) (citing 31 U.S.C. § 3730(b)(1)). The government may, though it need not, elect to intervene and proceed with the action. 31 U.S.C. § 3730(b)(2); *Thornton*, 207 F.3d at 771. If the government intervenes, it may settle the action over the relator's objections if the court determines that the proposed settlement is fair, adequate, and reasonable under all circumstances.[19] 31 U.S.C. § 3730(c)(2)(b).

Under § 3730(d)(1) of the FCA, a successful relator "shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed

---

[17] Defendants can incur liability under the False Claims Act by submitting claims for services rendered in violation of the AKS or the Stark Act. *United States v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 593 (S.D. Tex. 2018), *aff'd sub nom. United States ex rel. Patel v. Catholic Health Initiatives*, 792 F. App'x 296 (5th Cir. 2019) (citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997)); *see U.S. ex rel. Parikh v. Brown*, 587 F. App'x 123, 128 (5th Cir. 2014).
[18] *Qui tam* is short for "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*," which means "who pursues this action on our Lord the King's behalf as well as his own." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007).
[19] The relators did not present any objections to the global settlement agreement with the government and defendants Jolly, Griffith, Ridgeway, and UTC.

to the prosecution of the action." 31 U.S.C. § 3730(d)(1); *see U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 475 (5th Cir. 2009). Any such payment to a relator "shall be made from the proceeds." 31 U.S.C. § 3730(d)(1). Section 3730(d)(1) further provides that "[a]ny such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees, costs, and expenses. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1).

## A. Relators' Entitlement to Attorneys' Fees, Costs, and Expenses

The defendants dispute whether Church, Lawson, and Green are entitled to attorneys' fees, costs, and expenses under § 3730(d)(1). The defendants acknowledge that McNeil and Bergeron have a right to recover attorneys' fees, costs, and expenses, but they argue that Church, Lawson, and Green are not entitled to such awards because Church, Lawson, and Green did not directly receive any proceeds from the settlement of the *qui tam* actions.[20] The Court agrees.

Section 3730(d)(1) of the FCA provides for an award to a *qui tam* relator, as well as attorneys' fees, costs, and expenses. This statutory provision states, in pertinent part:

---

[20] *See* R. Doc. No. 68, at 1–2, 6; R. Doc. No. 69, at 1–2; R. Doc. No. 70, at 1; R. Doc. No. 72, at 1.

The argument by McNeil and Bergeron that the defendants waived their right to challenge McNeil's and Bergeron's entitlement to attorneys' fees, costs, and expenses is moot, as the defendants do not dispute that McNeil and Bergeron have such a right under § 3730(d)(1). The defendants do, however, contest the reasonableness of McNeil's and Bergeron's requests for attorneys' fees, costs, and expenses.

If the Government proceeds with an action brought by a person under [§ 3730(b)], such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action . . . Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3730(d)(1).

As evident from the text of the statute, the award of attorneys' fees, costs, and expenses is separate from the award of a percentage of the settlement proceeds—a relator "shall receive" a share of the proceeds, and the relator "shall also receive" an amount for reasonable expenses, including attorneys' fees and costs. *Id.* The statute also makes clear that the relator's award from the settlement shall be taken out of the proceeds, while attorneys' fees, costs, and expenses shall be assessed against the defendant. *See id.*; *U.S. ex rel Sharma v. Univ. of S. California*, 217 F.3d 1141, 1143 (9th Cir. 2000) ("[T]he statute explicitly separates proceeds from attorneys' fees and costs" and "requires attorneys' fees and costs to be 'awarded against the defendant, rather than taken out of the proceeds of the FCA recovery.'") (quoting *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 747 (9th Cir. 1993)).

Based on the plain language of § 3730(d)(1), a person who is entitled to attorneys' fees, costs, and expenses is one who receives a payment from the proceeds of the action or settlement of the claim. The statute clearly states that any payment "to a person" shall be made from the proceeds, and that "*any such person,*" shall also

receive attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1) (emphasis added). The mandatory award of attorneys' fees, costs, and expenses does not apply to all persons who bring a *qui tam* action under § 3730(b), but rather only to those who receive a payment from its proceeds. *See United States v. NextCare, Inc.*, No. 11-141, 2013 WL 431828, at *2 (W.D.N.C. Feb. 4, 2013) ("The plain language of the FCA demonstrates that a relator is only entitled to attorneys' fees if that relator also obtained a relator's share following a court award or settlement."); *United States ex rel. Greenwald v. Kool Smiles Dentistry, PC*, No. 10-1100, 2018 WL 4356744, at *3 (D. Conn. Sept. 12, 2018) (holding that a relator who was a party to a settlement agreement but did not receive any payment of a relator's share was not entitled to attorneys' fees and costs).

The global settlement agreement between all parties in this case did not provide for a relator's share to every relator. Rather, the global settlement agreement stated that the government and the relators "each retained all of their rights pursuant to the FCA on the issue of share percentage, *if any*, that Relators should receive of any proceeds of the settlement of their claim(s)."[21] When the government and the relators came to a subsequent agreement concerning share percentage—i.e., the Relators Settlement Agreement—that agreement explicitly provided relator shares of the settlement amount to Bergeron and McNeil only.[22] The agreement also

---

[21] R. Doc. No. 55-4, at 9 (emphasis added).
[22] R. Doc. No. 70-2, at 2.

made clear that the government "intends to award a share only to Relators Bergeron and McNeil, and relators do not intend to contest such an award."[23]

While the relators were not barred from entering into separate agreements as to the division of the shares awarded to Bergeron and McNeil, the Relators Settlement Agreement between the government and the relators did not provide for such shares to Lawson, Green, Church, or Outerbridge.[24] All relators agreed that this settlement agreement was fair, adequate, and reasonable under all circumstances.[25]

Lawson, Green, and Church have not explained why they should be entitled to attorneys' fees, costs, and expenses under § 3730(d)(1) when they each failed to receive a share of the settlement proceeds. They present a broad argument that all relators are entitled to recover their attorneys' fees, costs, and expenses when a defendant settles a group of cases by those relators.[26] However, the cases they cite in support of that proposition are inapposite. In *United States ex. Rel. Rafter H. Constr., LLC v. Big-D Constr. Corp.*, the settlement agreement between the government and the relators provided shares of the settlement amount to both relators moving for attorneys' fees and costs. 350 F. Supp. 3d 938, 941 (D. Idaho 2018), *on reconsideration*, 358 F. Supp. 3d 1096 (D. Idaho 2019).[27] And in *United States ex rel. Bliss v.*

---

[23] *Id.*

[24] The declaration of Mark Schlein, attorney of record for McNeil, stated that the relators "came to an agreement on how to divide the relator's share on the UTC payment amongst themselves." R. Doc. No. 55-3, at 2. However, no such agreement has been presented to the Court.

[25] R. Doc. No. 70-2, at 2.

[26] R. Doc. No. 57-1, at 2; R. Doc. No. 58-1, at 21.

[27] *See* Settlement Agreement at 2, *Rafter*, No. 16-401 (D. Idaho Aug. 5, 2018), ECF No. 24-5.

*Biocompatibles Int'l PLC*, the *qui tam* action resulting in settlement was brought by one relator alone. No. 13-667, 2019 WL 79488, at *1 (W.D. Tex. Jan. 1, 2019).

Cases with more analogous facts to the instant matter undercut Lawson, Green, and Church's position. Similar to the global settlement agreement in this case, the settlement agreements between the parties in *NextCare* did not provide a share of the proceeds to every relator in the action. 2013 WL 431828, at *3. Despite the moving relator's contention that he had a private agreement to share proceeds with another relator who did receive payment under the settlement agreements, the court concluded that a relator who "recovered nothing" pursuant to the settlement agreements was not entitled to attorneys' fees and costs under FCA statutes. *Id.* Likewise, as previously stated, in *Kool Smiles Dentistry*, the court found that a relator was ineligible to receive attorneys' fees and costs under § 3730(d)(1) because he did not receive a relator's share from the settlement agreement to which he was a party. 2018 WL 4356744, at *2–3.

Like the relators in *NextCare* and *Greenwald*, Lawson, Green, and Church did not receive any proceeds from the global settlement agreement or the Relators Settlement Agreement. Therefore, they are not entitled to an award of attorneys' fees, costs and expenses. Only McNeil and Bergeron may be awarded attorneys' fees, costs, and expenses pursuant to § 3730(d)(1).

### B. Reasonable Attorneys' Fees, Costs, and Expenses

The parties agree that the Court should apply the "lodestar" method to determine the relators' reasonable attorneys' fees. *See United States ex rel. Boogaerts*

*v. Vascular Access Centers, L.P.*, No. 17-2786, 2019 WL 568643, at *1 (E.D. La. Feb. 12, 2019) (Fallon, J.) ("Federal courts have followed the "lodestar" method typically followed under other fee-shifting statutes in calculating attorneys' fees in *qui tam* actions.") (citing *United States ex rel. Burr v. Blue Cross & Blue Shield of Florida*, 882 F. Supp. 166, 169 (M.D. Fla. 1995) (collecting cases)).

The first step is to determine the lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). The court must then consider whether to adjust the lodestar upward or downward, depending on the circumstances of the case and the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 715 (5th Cir. 1974). *Id.*

The *Johnson* factors are:

(1)   the time and labor required to represent the client or clients;
(2)   the novelty and difficulty of the issues in the case;
(3)   the skill required to perform the legal services properly;
(4)   the preclusion of other employment by the attorney;
(5)   the customary fee charged for those services in the relevant community;
(6)   whether the fee is fixed or contingent;
(7)   the time limitations imposed by the client or circumstances;
(8)   the amount involved and the results obtained;
(9)   the experience, reputation, and ability of the attorney;
(10)  the undesirability of the case;
(11)  the nature and length of the professional relationship with the client; and
(12)  awards in similar cases.

*See Johnson*, 488 F.2d at 717–19. "[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*

*v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The Fifth Circuit has explained that "[t]he most critical factor in determining an attorney's fee award is the 'degree of success obtained.'" *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)).

There is a "strong presumption" that the lodestar represents the reasonable fee, and parties who seek an adjustment bear the burden of showing that such an adjustment is necessary. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) and *Blum v. Stenson*, 465 U.S. 886, 898 (1984)).

Parties seeking attorneys' fees bear the burden of demonstrating the reasonableness of the hours billed. *Saizan*, 448 F.3d at 799. To that end, they must prove that they exercised billing judgment, which "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.*; *see Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 n.9 (5th Cir. 1996) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off.") (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990)); *Leroy v. City of Houston*, 831 F.2d 576, 586 n.15 (5th Cir. 1987) (finding billing records to be deficient and noting that "the billing records are completely devoid of any hours written off"). The party must also provide sufficient documentation, such as contemporaneous billing records, invoices, and affidavits, for the court to determine reasonable hours. *See Gagnon v. United Technisource, Inc.*,

607 F.3d 1036, 1044 (5th Cir. 2010). The court may reduce the number of hours awarded if the documentation is vague or incomplete. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Hours should also be excluded from the fee award if the time is excessive, duplicative, or inadequately documented. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

If a party fails to provide sufficient evidence of billing judgment, the proper remedy is "a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan*, 448 F.3d at 799.

To determine the applicable rates for the lodestar calculation, the court should use the "prevailing market rates in the relevant community." *McClain,* 649 F.3d at 381 (quoting *Blum*, 465 U.S. at 895). The Fifth Circuit has "consistently interpreted 'prevailing community' to mean the local geographic community"—i.e., the forum district. *U.S., ex rel., Cook-Reska v. Cmty. Health Sys., Inc.*, 641 F. App'x 396, 400 (5th Cir. 2016) (citing *McClain*, 649 F.3d at 381–82). Only where "abundant and uncontradicted evidence prove[s] the necessity of . . . out-of-district counsel," should such counsel's "home" rates be considered for the purposes of calculating the lodestar. *McClain*, 649 F.3d at 382. "[T]he burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896 n.11).

### i. McNeil's Attorneys' Fees, Costs, and Expenses

McNeil seeks $78,427.00 in attorneys' fees and $3,194.43 in costs and expenses from UTC and Jolly.[28] McNeil also asks that the Court "retain jurisdiction over her case to award any additional attorneys' fees, costs, and expenses that will be incurred in the future prior to full resolution of this action."[29]

#### a. Lodestar

The Court will first calculate the lodestar for McNeil's counsel based on reasonable hours expended and reasonable hourly rates.

McNeil submitted time records for attorneys Mark Schlein ("Schlein"), Diane Marger Moore ("Moore"), and Crawford Appleby ("Appleby"), as well as paralegal Gary Brown ("Brown"), all with the law firm of Baum Hedlund Aristei & Goldman PC.[30] Schlein and Moore are Florida-based attorneys who have been licensed to practice law since 1971 and 1978, respectively.[31] According to Schlein's declaration, he, Moore, and Appleby are experienced attorneys in FCA litigation.[32] Schlein has served as counsel in whistleblower cases at the state and federal levels since 1993, and he previously served as the head of the Florida Medicaid Fraud Control Unit and Special Deputy General Counsel in Florida's Department of Health.[33] Moore has tried

---

[28] R. Doc. No. 79, at 9. McNeil originally sought $77,563.00 in attorney's fees in her motion, R. Doc. No. 55, at 1, but she amended her request in reply to Jolly's opposition to account for reduced paralegal hours and additional attorney hours spent drafting the reply. *See* R. Doc. No. 79, at 9.

[29] R. Doc. No. 55, at 1.

[30] *See* R. Doc. No. 55-6.

[31] R. Doc. No. 55-3, at 2.

[32] *See id.* at 2.

[33] *Id.*

over two-hundred jury trials nationally and is intimately involved in the firm's FCA cases.[34] Los Angeles-based Appleby has been licensed to practice law since 2013, and he has worked extensively on FCA cases for nearly four years.[35]

McNeil's request for attorneys' fees is broken down as follows:[36]

| Timekeeper | Hours Requested | Rate Requested |
|---|---|---|
| Mark Schlein | 45.8 | $550 |
| Diane Marger Moore | 75.3 | $550 |
| Crawford Appleby | 32.78 | $300 |
| Gary Brown | 14.2 | $140 |

### Hours Reasonably Expended

McNeil argues that the hours billed by Schlein, Moore, Appleby, and Brown are reasonable and supported by sufficiently detailed billing records.[37] As evidence of billing judgment, McNeil also submitted records of attorney time expended by Schlein and Appleby in 2019 and 2020 that were not billed.[38]

The defendants contend, however, that many entries in the billing records by McNeil's counsel are vague and inadequately documented, and that hours should be reduced to account only for "those expended in assisting the government in its

---

[34] *Id.*

[35] *Id.*

[36] R. Doc. No. 55-6; R. Doc. No. 55-2, at 8–9. McNeil originally requested fees for 38.8 hours of Brown's paralegal time, *see* R. Doc. No. 55-2, at 8, but reduced her request by 24.6 hours in response to Jolly's opposition. R. Doc. No. 79, at 9. McNeil also added an additional 14.36 hours to Appleby's time spent drafting the reply to Jolly's opposition. *See id.*

[37] R. Doc. No. 55-2, at 10.

[38] R. Doc. Nos. 79-2 & 79-3.

prosecution of the case."[39] The defendants draw a distinction between time spent communicating with the government and time spent communicating with the client.[40] They argue that the number of hours billed for the latter should be reduced because such time constitutes "client hand-holding," and they should not be responsible for those fees.[41]

The Court has broad discretion to exclude or reduce hours for entries that are vague or insufficiently documented. *Walker v. City of Mesquite, TX*, 313 F.3d 246, 252 (5th Cir. 2002); *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). Having reviewed each line of the billing records for Schlein, Moore, Appleby, and Brown, the Court finds that a reduction is warranted due to the vagueness of certain entries by Schlein and Moore.

Notably, a significant number of Schlein's entries provide almost no information as to the subject matter or nature of the work that was done. Nearly two-thirds of Schlein's entries simply state, "Conference w/ client," without any additional details regarding the issues addressed at such conferences.[42] The time billed for these client conferences amounts to 22.35 hours—approximately 49% of Schlein's total

---

[39] R. Doc. No. 69, at 5; *see* R. Doc. No. 68, at 6 n.22; R. Doc. No. 70, at 8; R. Doc. No. 72, at 1. Ridgeway did not submit his own substantive memorandum in opposition to the relators' motions for attorneys' fees, costs, and expenses, but rather stated that he "adopts and incorporates by reference in its entirety all arguments and exhibits submitted in the Opposition brief filed by [Griffith], as well as all consistent arguments advanced by any other defendant." R. Doc. No. 72, at 1.

[40] *See* R. Doc. No. 69, at 6.

[41] *See id.*

[42] Specifically, forty-six out of Schlein's seventy entries state, "Conference w/ client." R. Doc. No. 55-6, at 2–4.

hours. In addition, three entries only state, "Review documents," again without any other descriptive information.[43] These three entries amount to 6.5 hours.

Although Schlein provided discrete time records for each of these items of work, this barebones documentation "is too vague to permit meaningful review" by the Court to determine whether the time was reasonably expended on the litigation. *Louisiana Power*, 50 F.3d at 326; *see Walker*, 99 F.3d at 773 (finding entries such as "analyzing documents" and "phone interviews" to be "woefully inadequate" to support a fee application); *Leroy*, 906 F.2d at 1080 (striking entries such as "Work on Brief" and "Review for Oral Argument" because they were "vague as to precisely what was done"); *Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). These entries—totaling 28.85 hours—shall be excluded from Schlein's time.[44]

The records for Moore, Appleby, and Brown provide greater description of the work that was done.

---

[43] *Id.*

[44] The defendants also object to quarter-hour billing by Schlein. *See* R. Doc. No. 69, at 15. Although the Fifth Circuit disfavors quarter-hour billing, it has explained that it does not necessitate a reduction in hours if it appears that the time billed is an accurate reflection of the time actually expended. *See C & D Prod. Servs. v. Dir., Office of Worker's Comp. Programs*, 376 F. App'x 392, 394 (5th Cir. 2010); *Conoco v. Director, Office of Worker's Compensation Programs,* 194 F.3d 684, 692 (5th Cir. 1999)). The Court has previously stated that the entries labeled as "Conference w/ client" and "Review documents," many of which are billed in quarter-hour increments shall be excluded for vagueness. The amounts of time spent for the remaining entries that were billed in quarter-hours are reasonable and will not be excluded because they were billed on a quarter-hour basis.

Moore's entries—with the exception of the September 22, 2014 entry—are sufficiently specific as to the subject matter and nature of the work, and the time expended is reasonable.[45] The September 22, 2014 entry of 6.5 hours to "[r]eview additional client documents," however, must be excluded from Moore's hours for vagueness, as this scant description provides no basis for the Court to determine whether this time was reasonably expended or excessive.[46]

---

[45] The defendants argue that Moore's time should be reduced because several entries are block-billed, which is the practice of describing multiple activities in a single time entry. *C & D Prod. Servs. v. Dir., Office of Worker's Comp. Programs*, 376 F. App'x 392, 394 (5th Cir. 2010). Block-billing is generally disfavored because it impedes the reasonableness analysis. *See Creecy v. Metropolitan Property and Cas. Ins. Co.*, 548 F. Supp. 2d 287 (E.D. La. 2008); *Hensley*, 461 U.S. at 437 n.12. However, the Court will not reduce Moore's hours for block-billing because the entries contain sufficient information for the Court to determine that the hours were reasonably expended. *See C & D Prod. Servs.*, 376 F. App'x at 394.

The defendants also argue that Moore's time should be reduced because her billing entries "do not reflect the benefit of [Moore's] experience." R. Doc. No. 69, at 18. In support of this argument, the defendants point to the "at least 11.9 hours spent on research" reflected in Moore's billing entries. *Id.* The Court does not find this amount of time to be unreasonable, as all attorneys—even the most experienced ones—must conduct legal research into the law and the facts specific to the case before them. *See U.S., ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 96-1676-12, 2002 WL 34236885, at *17 (D.S.C. May 23, 2002) ("[I]t is often necessary for a senior attorney to do his or her own research to gain a full and proper understanding of the issues.").

[46] R. Doc. No. 55-6, at 5. The defendants also object to the September 3, 2014 entries by Schlein and Moore as being duplicative. However, the records indicate that the 0.7 hours expended by Schlein and Moore on this date was for the purpose of discussing McNeil's case and the facts related to it at the outset of the litigation. *Id.* at 2, 5. The Court finds it reasonable for co-counsel to confer with each other in the initial stages of a case, and this amount of time for this purpose is not excessive. *See U.S. ex rel. Thompson v. Walgreen Co.*, 621 F. Supp. 2d 710, 716 (D. Minn. 2009) (noting that "collaborative work of a group of attorneys is necessary" during the course of litigation and finding the review of a new case by three attorneys to be "the type of early work for which a group of attorneys might reasonably bill.").

Appleby's billing entries are specific as to the subject matter and nature of the work, and the hours expended are reasonable. Although the defendants object to the number of hours Appleby billed for drafting McNeil's motion for attorneys' fees, costs, and expenses—18.42 hours—the Court does not find this amount of time to be unreasonable, considering the work that would be required for an attorney to prepare a fee application and the motion that McNeil presented.

With respect to Brown's hours, the Court agrees with the defendants that nearly three-fourths of Brown's entries describe clerical work and, therefore, are not recoverable for attorneys' fees.[47] *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical."). McNeil conceded and reduced Brown's time by 24.6 hours.[48] Because of this concession, the Court does not find that an additional reduction in Brown's hours is needed.

Reasonable Hourly Rates

McNeil requests hourly rates of $550 for Schlein and Moore, $300 for Appleby, and $140 for Brown, and she contends that these rates are reasonable, considering

---

[47] For example, thirty-one out of Brown's forty-three entries refer to the "process[ing]" of communications, emails, documents, letters, and court-related documents. *See*. R. Doc. No. 55-6, at 7–8. These entries amount to 14.65 hours. Additional entries also describe clerical tasks, such as "Admin re: prep Mark Schlein's Pro Hac Vice & send to court clerk," "Obtain/forward bios of judges," and "Re-send sealed filing to clerk." *Id.* This type of work is clearly not legal in nature, and it must therefore be excluded.
[48] *See* R. Doc. No. 79, at 9.

their respective levels of experience and comparative rates in Florida, Los Angeles, and the District of Columbia.[49]

McNeil provided the "United States Consumer Law Attorney Fee Survey Report" for 2017–2018 and the "United States Attorney's Office Attorney's Fees Matrix" for 2015–2019 in support of this argument.[50] However, these reports do not provide hourly rate information for this district. The only section of the United States Consumer Law Attorney Fee Survey Report submitted by McNeil's counsel states hourly rates for Florida and Los Angeles, and the United States Attorney's Office Fees Matrix was determined based on reported hourly rates for the D.C. metropolitan area.[51] As stated previously, the reasonable hourly rate should be based on the prevailing market rates in this district, absent a showing of the necessity of out-of-district counsel. *See McClain*, 649 F.3d at 382. McNeil has not made any such showing or provided any reason why her counsel's "home" rates or rates for the District of Columbia should be used instead.[52]

---

[49] *See* R. Doc. No. 55-2, at 8–9.

[50] R. Doc. Nos. 55-5 & 55-8.

[51] *See id.* Moreover, the United States Attorney's Office Fees Matrix states that the matrix "has not been adopted by the Department of Justice generally for use outside the District of Columbia." R. Doc. No. 55-8, at 2.

[52] McNeil's reference to the United States Magistrate Judge's opinion in *Becker v. Tools & Metal, Inc.*, which awarded fees based on a $600 hourly rate for partners and a $225 to $400 rate for senior associates, is also unavailing. No. 05-0627, 2012 WL 12985112, at *11 (N.D. Tex. Dec. 12, 2012). The hourly rates in that case were not challenged, and upon review of the Magistrate Judge's recommendations, the district court specifically noted that its opinion "is not to be used as authority that this court held that an hourly rate of $600 was reasonable" for plaintiff's counsel, because the defendant did not object to such a rate. *U.S. ex rel. Becker v. Tools & Metals, Inc.*, No. 05-0627, 2013 WL 1293818, at *29 n.17 (N.D. Tex. Mar. 31, 2013). Moreover, *Becker* was litigated in the Northern District of Texas.

The defendants argue that the requested hourly rates should be adjusted downwards. In support, the defendants submitted a declaration by Walter F. Becker, Jr. ("Becker"), a partner at Chaffe McCall, LLP, testifying to prevailing market rates in the Eastern District of Louisiana for attorneys who practice white collar litigation.[53] Becker is the head of Chaffe McCall, LLP's criminal investigations and white-collar criminal defense section, and he has represented clients in *qui tam* actions and cases involving health care fraud.[54] Previously, Becker served as the First Assistant United States Attorney and Chief of the Criminal Division of the United States Attorney's Office for the Eastern District of Louisiana.[55] According to Becker, the prevailing hourly rates in the Eastern District of Louisiana for white collar litigation attorneys is $350 to $400 for senior partners with over thirty years of experience, $275 to $350 for mid-career partners with twenty to thirty years of experience, $250 to $300 for junior partners with ten to twenty years of experience, $200 to $250 for associates with five to ten years of experience, $125 to $225 for associates with one to five years of experience, and $100 to $145 for paralegals.[56]

To determine the reasonable hourly rates for McNeil's counsel, the Court has reviewed the record in this case, the skills and experience of her counsel, and the

---

[53] R. Doc. No. 70-3.
[54] *Id.* at 1.
[55] *Id.*
[56] *Id.* at 2.

rates awarded in *qui tam* and other comparable cases recently decided in this district.[57] Based on the foregoing, the Court finds that the following rates are reasonable: $450 for Schlein and Moore, $250 for Appleby, and $125 for Brown.[58]

<u>Determination of the Lodestar</u>

Accordingly, taking into account the reduction of hours for Schlein and Moore, the hourly rates and hours for McNeil's counsel are adjusted as follows:

| Timekeeper | Adjusted Hours | Adjusted Rate |
|---|---|---|
| Mark Schlein | 16.95 | $450 |
| Diane Marger Moore | 68.8 | $450 |
| Crawford Appleby | 32.78 | $250 |
| Gary Brown | 14.2 | $125 |

The lodestar for McNeil's counsel is $48,558.00.

---

[57] *See Boogaerts*, 2019 WL 568643, at *1 (finding hourly rate of $350 to be reasonable for a partner with over eighteen years of experience) (collecting cases); *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 17-491, 2020 WL 375596, at *5 (E.D. La. Jan. 23, 2020) (Ashe, J.) (finding hourly rates of $450 for partner with thirty-two years of experience, $350 for partners with eleven to fifteen years of experience, and $200 for associates with five to seven years of experience to be reasonable); *Smith v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, No. 17-7267, 2019 WL 7580771, at *6 (E.D. La. Sept. 5, 2019) (Wilkinson, M.J.), *report and recommendation adopted,* No. 17-7267, 2019 WL 7580772 (E.D. La. Oct. 1, 2019) (surveying cases in this district and finding that hourly rates awarded for paralegals ranged from $80 to $130); *Batiste v. Lewis*, No. 17-4435, 2019 WL 1591951, at *3 (E.D. La. Apr. 12, 2019) (finding $375 per hour to be reasonable for a partner with thirty-five years of experience and $200 per hour to be reasonable for an associate with five years of experience); *Funez v. EBM*, No. 16-01922, 2018 WL 5004806, at *4 (E.D. La. Oct. 16, 2018) (Roby, M.J.), *report and recommendation adopted as modified sub nom. Funez v. E.M.S.P., LLC*, No. 16-1922, 2019 WL 630295 (E.D. La. Feb. 14, 2019) (finding $350 per hour to be reasonable for an attorney with twenty-five years of experience).

[58] The Court recognizes that these rates are on the high-end of prevailing market rates in this district, but it finds them to be reasonable in light of the considerations previously stated.

### b. Johnson *Factors*

The next step of the attorneys' fees analysis is to determine whether the lodestar should be adjusted based on the circumstances of the case and the *Johnson* factors. Neither McNeil nor the defendants seek an upward or downward adjustment.[59] Accordingly, the Court finds that an adjustment of the lodestar is not warranted, as no evidence has been presented to overcome the presumption that the lodestar represents the reasonable amount.

### c. *Costs and Expenses*

The Court has reviewed the documentation of costs and expenses, which included travel, shipping, and court costs, and finds that the $3,194.43 in costs incurred is reasonable. Although the defendants objected to certain items,[60] McNeil's

---

[59] Jolly briefly "suggest[s]" that the *Johnson* factors "may indicate a reduction in the lodestar" because "counsel for Realtors' [sic] tout their experience, but took a substantial amount of time for researching and drafting, which would suggest either the experience is not as suggested, or alternatively, the loadstar [sic] should be reduced." R. Doc. No. 69, at 19–20. However, Jolly has not provided sufficient evidence to demonstrate that a downward adjustment is warranted. R. Doc. No. 69, at 19.

[60] *See* R. Doc. No. 69, at 21. Jolly characterized certain entries by Schlein, such as charges for airfare and hotel, as being "dubious" because they did not indicate the "type of seat/class booked" or the "quality of accommodations." *Id.* Jolly also contended that a "questionable billing entry and rate is the mileage charged" because it did not "specify the rate charged per mile, number of miles claimed, and whether this is in line with the appropriate reimbursement of the IRS mileage rate." *Id.* However, Jolly has not provided any authority requiring such specificity for mileage costs. The Court finds that the amounts charged for these entries are not unreasonable, and McNeil's counsel explained that these travel costs and expenses were incurred for in-person meetings with the Assistant United States Attorneys at the beginning of the case. *See* R. Doc. No. 55-7, at 1.

counsel provided a sufficient explanation demonstrating that they were reasonable costs and expenses necessarily incurred.[61]

### ii. Bergeron's Attorneys' Fees, Costs, and Expenses

Bergeron seeks $126,340.00 in attorneys' fees and $1,856.69 in costs and expenses.[62]

#### a. Lodestar

Again, the Court will first calculate the lodestar amount based on reasonable hours expended and reasonable hourly rates.

Bergeron submitted time records for attorneys and paralegals from two law firms: Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC ("Gainsburgh Benjamin") and Levy Konigsberg, LLP ("Levy Konigsberg").[63] Levy Konigsberg represented Bergeron when he filed his *qui tam* action in the Southern District of New York in 2014; Levy Konigsberg associated with local counsel Gainsburgh Benjamin when Bergeron's case was transferred to this district in 2016.[64]

From Gainsburgh Benjamin, Gerald Meunier ("Meunier"), a partner, and M. Palmer Lambert ("Lambert"), an attorney, have been licensed to practice law in Louisiana since 1977 and 2010, respectively.[65] Meunier and Lambert have experience

---

[61] *See* R. Doc. No. 79, at 8–9. McNeil's counsel also explained that FedEx charges to the Florida Supreme Court were to obtain certificates of good standing for *pro hac vice* admission of Florida lawyers in Louisiana and FedEx shipments of items to local counsel. *Id* at 9.

[62] R. Doc. No. 59, at 1.

[63] R. Doc. Nos. 59-3 & 59-8.

[64] *See* R. Doc. No. 59-5, at 1, 3.

[65] R. Doc. No. 59-2, at 1–2.

representing plaintiffs in complex litigation and MDL matters.[66] From Levy Konigsberg, Alan Konigsberg ("Konigsberg"), a founding partner, and Brendan Little ("Little"), an associate and "of counsel" attorney, have been licensed to practice law in New York since 1967 and 2013, respectively.[67] Konigsberg and Little have experience representing *qui tam* relators in FCA matters.[68] Bergeron also seeks fees for paralegal Rachel Hastings ("Hastings") of Levy Konigsberg.[69]

Bergeron's request for attorneys' fees is broken down as follows:[70]

| Timekeeper | Year | Hours Requested | Rate Requested |
|---|---|---|---|
| Gerald Meunier | 2016–2019 | 2.8 | $900 |
| M. Palmer Lambert | 2016 | 7.2 | $400 |
| | 2017 | 0.5 | $500 |
| | 2018 | 0.7 | $500 |
| | 2019 | 8.2 | $500 |
| Alan Konigsberg | 2014–2015 | 9.2 | $850 |
| Brendan Little | 2014 | 155.6 | $400 |
| | 2015 | 38.8 | $450 |
| | 2016 | 10.6 | $500 |
| | 2017 | 4.3 | $550 |
| | 2018 | 2.1 | $600 |
| | 2019 | 23.4 | $650 |
| | 2020 | 5.6 | $650 |
| Rachel Hastings | 2014–2016 | 5.4 | $175 |

[66] *Id.*, at 2.
[67] R. Doc. No. 59-5, at 3; R. Doc. No. 59-1, at 6. Little's declaration only states that he graduated from law school in 2010. *Id.* According to Little's registration record in the New York State Unified Court System, Little became licensed in New York in 2013. *See* R. Doc. No. 68, at 11.
[68] R. Doc. No. 59-5, at 3.
[69] *See id.* at 2.
[70] R. Doc. Nos. 59-3 & 59-8.

<u>Hours Reasonably Expended</u>

Bergeron asserts that the hours expended were reasonably incurred and that the billing records demonstrate "proper leveraging of non-partner attorney time" and minimal duplication of work among his attorneys.[71] Bergeron also avers that the time entries submitted only reflect work related to claims that were transferred to this district.[72] According to Bergeron, "[a]ny amounts that were associated with claims not transferred to the Eastern District of Louisiana were omitted."[73]

The defendants argue that Bergeron's counsel failed to exercise billing judgment and that their hours should be reduced significantly.[74] Griffith submitted a line-by-line analysis of the billing entries by Bergeron's counsel and marked a substantial number of entries as "Vague," "Block-Billed," "Duplicative," "Clerical," and/or "Excessive."[75] The defendants contend that these entries should not be included in the fee award and proposed a drastic reduction in hours.[76]

The Court has reviewed each line of the billing records submitted by Bergeron's counsel and finds that a ten-percent reduction in hours is warranted due to the

---

[71] R. Doc. No. 59-1, at 6–7.

[72] *Id.* at 6.

[73] *Id.*

[74] *See* R. Doc. No. 68, at 12; R. Doc. No. 69, at 20; R. Doc. No. 70, at 7–9; R. Doc. No. 71, at 1.

[75] *See* R. Doc. No. 68-3, at 1–14. Jolly and Ridgeway adopted Griffith's exhibit, and UTC adopted Griffith's arguments with respect to Bergeron's billing entries. *See* R. Doc. No. 69, at 20; R. Doc. No. 70, at 8, R. Doc. No. 72, at 1.

[76] *See* R. Doc. No. 68, at 18. The defendants' proposed number of reasonable hours for all of Bergeron's counsel is 118.75 hours. R. Doc. No. 68, at 18. The billing entries provided by Bergeron show that he seeks attorneys' fees for a total of 274.4 hours. R. Doc. Nos. 59-3 & 59-8.

numerosity of vague entries, block-billing, certain clerical tasks, and Bergeron's failure to provide any evidence of time written off as unproductive, excessive, or redundant. *See Saizan*, 448 F.3d at 799. For example, approximately 9% of Little's entries simply state a variation of "email to and from" or "call with" the "client," without any description of the subject matter addressed in such emails or calls.[77] A substantial number of Little's other entries are similarly inadequate, such as "legal research" or "review documents."[78] In a parallel vein, one of Hastings's billing entries only states, "Prepare letter," and does not provide any information regarding the nature of the work done.[79] These scant descriptions are too vague to permit meaningful review by the Court.

The billing entries by Meunier and Lambert provide greater description of the specific nature and subject matter of their work, but the details of Lambert's billings indicate that a few entries were for clerical or non-legal tasks. Such tasks should be

---

[77] *See* R. Doc. No. 59-8, at 2–10. The entry for October 17, 2014 does not even state the sender or recipient of Little's email. *Id.* at 5.

[78] *See id.* at 2–10.

The defendants also argued that certain entries by Little should be excluded because of billing for "brief tasks." R. Doc. No. 68, at 14. The Court has reviewed the entries that Griffith highlighted as a "brief task," and it does not find them to be excludable on that basis. Similarly, the Court does not find the entries marked as "Duplicative" to be excludable as such. The defendants did not specify whether the entries were duplicative of an attorney's own work or that of co-counsel, but they acknowledged and "recognize[d] the value that thoroughness and collaboration play in the practice of law." R. Doc. No. 68, at 17. They have not provided any evidence that the work of one attorney was duplicative of that of any other co-counsel representing Bergeron.

[79] The only additional information provided for this entry was the amount of time spent—0.3 hours. *Id.* at 11.

excluded from an attorney's compensable hours.[80] For example, Lambert billed 0.2 hours on October 25, 2016 for "Emails with Little re: filing motion to enroll and motions for pro hac vice admission," and 0.3 hours on October 13, 2019 for "Emails with Little re: local reporter's inquiry on the case."[81]

Bergeron's counsel also block-billed a number of entries, making it difficult for the Court to determine if the time was reasonably expended on any particular task included in a single entry. For example, Little billed 3.0 hours on March 10, 2014 for "Legal research; draft complaint; email client; email to AJK" and 4.2 hours on April 7, 2014 to "Prepare complaint, disclosure and other documents for filing and service."[82] Not only are these entries too vague, but the lumping of these tasks together impedes the Court's ability to assess the reasonableness of the time spent.

Bergeron has also failed to present any documentation of unbilled time, which is required to demonstrate billing judgment. *See Saizan*, 448 F.3d at 799. Although Bergeron contends that the billing entries submitted do not reflect time spent on claims that were not transferred to this district, he has not presented any supporting evidence to that effect.[83] In addition, Bergeron has not provided the Court with any

---

[80] *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 14-00371, 2018 WL 1602460, at *6 (E.D. Tex. Apr. 3, 2018); *Malick v. NCO Fin. Servs., Inc.*, No. 14-1545, 2015 WL 4078037, at *5 (S.D. Tex. July 6, 2015); *Black v. SettlePou, P.C.*, No. 10-1418, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014); *Lewallen v. City of Beaumont*, No. 05-733, 2009 WL 2175637, at *7 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x 38 (5th Cir. 2010); *Speaks v. Kruse*, No. 04-1952, 2006 WL 3388480, at *6 (E.D. La. Nov. 20, 2006) (Livaudais, J.).
[81] R. Doc. No. 59-3, at 3, 4.
[82] R. Doc. No. 59-8, at 3.
[83] While Bergeron made this assertion in his memorandum in support of his motion for attorneys' fees, costs, and expenses, *see* R. Doc. No. 59-1, at 6, "[s]tatements by

28

evidence of time written off as unproductive, excessive, or redundant for the claims that *were* transferred. *See Leroy*, 831 F.3d at 585 n.15 ("[B]illing records should reflect whatever time was spent on the case but not included in the fee request.") (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327–28 (D.C. Cir. 1982)). Bergeron has also not stated that his counsel did not write off any time as unproductive, excessive, or redundant, or explained the efforts that his counsel undertook to ensure that the billing records submitted do, in fact, exclude such time.[84]

Because of the lack of billing judgment, as reflected in the deficient billing records by Bergeron's counsel and Bergeron's failure to provide evidence of time written off, the Court will reduce the total hours of attorney time requested by ten percent.[85] *See Saizan*, 448 F.3d at 800 (affirming ten percent reduction of the lodestar

---

counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). Bergeron has not provided an affidavit or any other documentation to support this contention. Lambert's declaration only states that the time reflected in Levy Konigsberg's billing entries "was reasonable for the successful prosecution and efficient procedural progression of this matter in the Eastern District of Louisiana." R. Doc. No. 59-2, at 2. The Court also notes that the billing records from Levy Konigsberg start from 2014, before Bergeron's case was transferred to this district. Moreover, there is no indication in the billing records that the entries distinguished between claims that were and were not transferred to this district.

[84] *See Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 09-0752, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011) (finding a lack of billing judgment for the plaintiff's failure to submit evidence of unbilled time and rejecting the plaintiff's argument that he did not need to provide such evidence because his counsel "does not record unproductive time or excessive time in his time records in the first place"); *Creecy*, 548 F. Supp. at 279, 286 ("[T]he transactions listing does not mention any hours expended but not billed to [the defendant]. It is therefore presumed that neither [attorney for the defendant] exercised billing judgment.").

[85] While the Court recognizes that it may reduce hours based on a line-by-line analysis of the billing records, the Court finds a percentage reduction to be an appropriate remedy to account for the lack of billing judgment by Bergeron's counsel. *See Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002).

for lack of billing judgment); *Louisiana Power*, 50 F.3d at 326 (reducing attorneys' fee award by ten percent for inadequately documented hours); *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 707 (E.D. La. 2001) (Livaudais, J.) (reducing fee award by twenty-five percent for vague and inadequately documented time entries).

<u>Reasonable Hourly Rates</u>

As outlined previously, Bergeron requests hourly rates of $900 for Meunier, $400 to $500 for Lambert, $850 for Konigsberg, $400 to $650 for Little, and $175 for Hastings.

In support of the requested rates by Levy Konigsberg and Gainsburgh Benjamin, Bergeron provided declarations by Lambert, Little, and attorney Leonard A. Davis ("Davis").[86] Davis is a partner at Herman, Herman & Katz, LLC in Louisiana whose practice "includes primarily business matters and litigation."[87] He stated that he is familiar with attorney rates charged in this district and nationally for complex litigation matters, and also that many law firms representing *qui tam* relators typically work on a contingency basis and have no established hourly rates.[88] According to Davis, the applicable hourly rates for these firms "vary widely by the type of matter and by geography" and would generally apply to "individually handled cases" and "other one-off disputes which typically are not comparable to high stakes complex litigation."[89] Based on publicly available information regarding billing rates

---

[86] R. Doc. Nos. 59-2, 59-4 & 59-5.
[87] R. Doc. No. 59-4, at 3.
[88] *Id.*
[89] *Id.*

across the country, Davis stated that rates for law firm partners range from $460 to $1,800 per hour.[90] Davis also acknowledged his familiarity with rulings in this district awarding attorneys' fees for common benefit services based on average hourly rates of $442.76 and $443.29.[91]

Citing Davis's declaration as support, Lambert's declaration states that the rates requested for him and Meunier are consistent with reasonable rates charged in this district and nationally for complex litigation.[92]

In a parallel vein, Little's declaration states that the rates requested for him, Konigsberg, and Hastings are the reasonable, customary rates set by Levy Konigsberg and are consistent with rates charged for FCA litigation in New York and nationally.[93] Bergeron also provided a section of the "United States Consumer Law Attorney Fee Survey Report" for 2015–2016, allegedly for New York.[94] However, Bergeron did not provide any reason why the prevailing market rates in this district

---

[90] *Id.* at 4.

[91] *Id.* (citing *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047 and *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640, 660 (E.D. La. 2010)).

[92] R. Doc. No. 59-2, at 2.

[93] R. Doc. No. 59-5, at 3–4. Bergeron also provided two attorney declarations that were filed in *Bliss*, 2019 WL 79488, in support of the relator's motion for attorneys' fees. R. Doc. Nos. 59-10 & 59-11. However, the Court will not consider these affidavits, as they were not prepared for this case.

[94] R. Doc. No. 59-13. It appears that Bergeron's counsel attached the incorrect section of the fee survey report, as the document that was filed only provides data for Missouri, Montana, and Las Vegas, Nevada. *See id.* The section that was filed also includes a list of federal district court cases across the country that have found the report to be problematic as to the determination of attorneys' fees. *See id.* at 11–13.

should not be used to determine the reasonable hourly rates for both his New York- and locally-based counsel.

The defendants assert that Bergeron's requested rates are unreasonable and that the Court should adjust the rates downwards, citing Becker's declaration as evidence of rates that would be reasonable in this district.[95] Jolly and UTC ask the Court to reduce the rates for Bergeron's counsel accordingly.[96] Griffith and Ridgeway also ask for a reduction in hourly rates and propose the following: $400 for Meunier and Konigsberg, $300 for Lambert, $250 for Little, and $115 for Hastings.[97]

As the Court did for McNeil's counsel, the Court has reviewed the record, skills and experience of counsel, as well as pertinent caselaw to determine reasonable hourly rates for Bergeron's attorneys. The Court considered Davis's declaration, which stated that hourly rates in *qui tam* cases "vary widely" by both the type of matter and geography, and that the range he provided, $460 to $1,800, was based on national data across an array of litigation areas, including bankruptcy matters and "rates supplied by law firms defending large corporations in complex matters."[98] The Court also reviewed Becker's declaration, which provided rates specific to this district and to white collar litigation. Based on the foregoing, the Court finds that a downward

---

[95] *See* R. Doc. No. 68, at 9–10; R. Doc. No. 69, at 9–10; R. Doc. No. 70, at 8.

[96] *See* R. Doc. No. 68, at 10; R. Doc. No. 69, at 8.

[97] R. Doc. No. 68, at 10–11. Griffith explained that he is "willing to accept the attorney billing rates awarded in *Boogaerts* and even expand to account for attorneys with experience beyond the 18 years at issue in that case." *Id.*

[98] R. Doc. No. 59-4, at 4. *See also U.S.A. ex rel. Liotine v. CDW-Gov't, Inc.*, No. 05-33, 2013 WL 5366960, at *3 (S.D. Ill. Sept. 25, 2013) (rejecting the defendant's assertion of a "national qui tam rate").

adjustment of rates is warranted and that the following rates are reasonable for Bergeron's counsel: $450 for Meunier and Konigsberg, $300 for Lambert, $250 for Little, and $125 for Hastings.[99]

<u>Determination of the Lodestar</u>

Accordingly, the hourly rates and hours for Bergeron's counsel are adjusted as follows:[100]

| Timekeeper | Year | Reasonable Hours | Reasonable Rate |
|---|---|---|---|
| Gerald Meunier | 2016–2019 | 2.52 | $450 |
| M. Palmer Lambert | 2016 | 6.48 | $300 |
| | 2017 | 0.45 | $300 |
| | 2018 | 0.63 | $300 |
| | 2019 | 7.38 | $300 |
| Alan Konigsberg | 2014–2015 | 8.28 | $450 |
| Brendan Little | 2014 | 140.04 | $250 |
| | 2015 | 34.92 | $250 |
| | 2016 | 9.54 | $250 |
| | 2017 | 3.87 | $250 |
| | 2018 | 1.89 | $250 |
| | 2019 | 21.06 | $250 |
| | 2020 | 5.04 | $250 |
| Rachel Hastings | 2014–2016 | 4.86 | $125 |

The lodestar for Bergeron's counsel is $64,040.00.

---

[99] As with the rates for McNeil's counsel, the Court recognizes that these rates are on the high-end of prevailing market rates in this district, but it finds them to be reasonable in light of the considerations previously stated.

[100] The Court applied the ten-percent reduction for lack of billing judgment to each timekeeper's total hours.

b. Johnson *Factors*

The defendants argue that the *Johnson* factors do not warrant an adjustment of the lodestar, while Bergeron asserts that the lodestar should be adjusted upwards pursuant to *Johnson* if the Court reduces the reasonable fee amount from Bergeron's request.[101] Bergeron contends that an upward adjustment is warranted due to the novelty and difficulty of the issues in the case, the skill required to perform the legal service properly, the contingent nature of the fee, the amount involved and results obtained, the experience, reputation, and ability of the attorneys, and awards in similar cases.[102]

The Court has considered each of the *Johnson* factors, and it finds that a lodestar adjustment is not warranted. Several of the factors that Bergeron cites have already been considered in determining the lodestar, including the time and labor required, the skill required, and the experience and ability of counsel. The Court also reviewed counsel's customary fees. Because these factors have been subsumed in the initial lodestar calculation, they should not be double-counted. *See Migis*, 135 F.3d at 1047.

With respect to the remaining factors, the Supreme Court has barred any use of a contingency fee arrangement as the basis for an adjustment. *Walker*, 99 F.3d at 772 (citing *Burlington*, 505 U.S. at 567 and *Shipes v. Trinity Indus.*, 987 F.2d 311,

---

[101] *See* R. Doc. No. 68, at 19; R. Doc. No. 59-1, at 8. Specifically, Bergeron seeks an upward adjustment "equal to the amount the Court reduces the reasonable rates charged by counsel." R. Doc. No. 59-1, at 9.

[102] *Id.* at 8.

323 (5th Cir. 1993)). In addition, the Fifth Circuit has made clear that an enhancement made on the amount involved and results obtained is appropriate "only when the fee applicant can demonstrate that 'it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result.'" *Id.* at 771–72 (quoting *Shipes*, 987 F.2d at 322). Bergeron has made no such showing.

With respect to the remaining factors, Bergeron has not provided any evidence that his attorneys were precluded from other employment or faced time limitations, that his case was "undesirable," or that the nature and length of his counsel's professional relationship with him was notable. The novelty and difficulty of the issues in this case and awards in similar cases also do not demonstrate that the lodestar is unreasonable.

Thus, Bergeron has not met his burden to prove that the lodestar should be adjusted upwards.

### c. *Costs and Expenses*

Bergeron seeks $1,856.69 for costs and expenses that he contends were necessarily incurred in the prosecution of his claims.[103] These include photocopying and printing, phone calls, postage and mailing, travel, court costs and filing fees, and legal research charges.[104]

The Court has reviewed Bergeron's "Disbursement Detail" from Levy Konigsberg and finds that a reduction is warranted due to the vagueness of certain

---

[103] R. Doc. No. 59-1, at 9; R. Doc. No. 59-5, at 4–5.
[104] *See* R. Doc. No. 59-8, at 11; R. Doc. No. 59-9.

charges. While parties may recover reasonable out-of-pocket expenses that they would normally charge to a fee-paying client, *see Associated Builders & Contractors of Louisiana, Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990), Bergeron has not provided any evidence that the "Xerox" and "Telephone" charges listed on the disbursement detail were not part of the firm's ordinary overhead expenses. In addition, the Xerox charges do not specify the print rate or the number of pages printed or photocopied.[105] The charges for "Messenger," "Excess Postage," and the 2014 "Express Mail" charges are also vague, and Bergeron has not provided any explanation for them. These costs and expenses, totaling $773.27, shall be excluded from Bergeron's award. The Court finds the remaining charges on the disbursement detail to be reasonable. Accordingly, Bergeron shall be awarded costs and expenses of $1,083.42.

## C. Awards Against the Defendants

The defendants argue that McNeil's and Bergeron's awards of attorneys' fees, costs, and expenses should not be assessed against them collectively. Specifically, Griffith, Ridgeway, and UTC assert that McNeil's motion should be denied against them, and Jolly asserts that Bergeron's motion should be denied against him.[106] The defendants also argue that joint and several liability should not be imposed.

Griffith and Ridgeway argue that they can each only be held responsible for Bergeron's fees, costs, and expenses—not those of any other relator—because

---

[105] *See* R. Doc. No. 59-9, at 1.
[106] *See* R. Doc. No. 68, at 6; R. Doc. No. 69, at 3–4; R. Doc. No. 70, at 9; R. Doc. No. 72, at 1.

Bergeron is the only relator who named them as defendants in his action.[107] However, only Bergeron seeks attorneys' fees, costs, and expenses against Griffith and Ridgeway, not McNeil, rendering Griffith's and Ridgeway's requests that McNeil's motion be denied against them moot.

As for Bergeron's award of attorneys' fees, costs, and expenses, Griffith and Ridgeway argue that they should each only be responsible for 0.59% of Bergeron's award because they were each only required to pay 0.59% of the total settlement award pursuant to the global settlement agreement.[108]

Jolly and UTC take the position that a relator is entitled to attorneys' fees, costs, and expenses only from a defendant from whom that relator received a share of the settlement proceeds under the Relators Settlement Agreement.[109] Thus, Jolly contends that Bergeron may not obtain attorneys' fees, costs, and expenses from him, and that Jolly is only responsible for McNeil's attorneys' fees, costs, and expenses; UTC contends that McNeil may not obtain attorneys' fees, costs, and expenses from UTC, and that UTC is only responsible for Bergeron's attorneys' fees, costs, and expenses.[110]

---

[107] R. Doc. No. 68, at 6.
[108] R. Doc. No 68, at 23.
[109] R. Doc. No. 69, at 4; R. Doc. No. 70, at 9.
[110] R. Doc. No. 69, at 4; R. Doc. No. 70, at 9. As stated previously, Bergeron was awarded $8,211,324.94 of the $42,109,358.68 settlement amount agreed upon by UTC, Ridgeway, Griffith, and the United States. R. Doc. No. 70-2, at 2. McNeil was awarded $110,000 of the $500,000 settlement amount agreed upon by Jolly. *Id.*

Jolly does not dispute that McNeil is entitled to attorneys' fees, costs, and expenses from him, and UTC does not dispute that Bergeron is entitled to attorneys' fees, costs, and expenses from UTC.

Joint and several liability may be imposed on defendants for damages and statutory penalties under the FCA. *United States ex rel. Drummond v. BestCare Lab. Servs., L.L.C.*, 950 F.3d 277, 285 (5th Cir. 2020); *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1013 (5th Cir. 1972). In addition, "[a] court may impose joint and several liability in setting fees." *Walker*, 99 F.3d at 772. Joint and several liability may be imposed when there is a "single indivisible injury" and "each party played a substantial role in the litigation." *Id.* at 773. Disparate fault does not preclude joint and several liability. *See id.* ("We know of no case suggesting that joint and several liability is inappropriate is a case of disparate fault. The standard American rule is that a plaintiff may recover against any joint wrongdoer and that the wrongdoers then can file contribution actions against their co-wrongdoers and allocate fault among themselves."). However, joint and several liability should not be imposed if it would lead to inequitable results. *Id.* at 772; *see, e.g., Nash v. Chandler*, 848 F.2d 567, 573 (5th Cir. 1988) (reversing an imposition of joint and several liability because one defendant could not be held liable on the merits).

The terms of the global settlement agreement speak to collective conduct by the defendants. In the agreement, the government "contends that it has certain civil claims against the Defendants arising from their submission of, or causing the submission of claims, to Medicare that were false because of . . . alleged conduct by Defendants from September 1, 2013 through May 30, 2017"—i.e., the "Covered Conduct," as referred to in the agreement[111] This conduct was comprised of the offer

---

[111] R. Doc. No. 55-4, at 4–5.

and payment of remuneration to physicians to induce the ordering of medically unnecessary pharmacogenetic tests, and the furnishing of such tests, which resulted in allegedly fraudulent claims for reimbursement from Medicare.[112] The "Covered Conduct" described in the agreement does not draw any distinctions as to actions by each defendant individually or each defendant's relative role in the litigation.[113] Indeed, Jolly acknowledges the "interrelatedness of the claims against all defendants."[114]

The defendants have not asserted that any injury in these consolidated *qui tam* cases is divisible or that any defendant did not play a substantial role in the litigation. Instead, Griffith, Jolly, and Ridgeway argue that it would be inequitable to impose joint and several liability because they were each responsible for only a small percentage of the total settlement amount. However, they have not presented any caselaw supporting their position that a defendant's share of responsibility for attorneys' fees, costs, and expenses should be assessed proportionally to that defendant's share of responsibility of an FCA settlement award.[115] Moreover, while the total settlement amount was over $42 million, at least $41 million consisted of a "Suspended Amount" in Medicare payments to UTC that the Centers for Medicare &

---

[112] *See id.*
[113] According to the United States Department of Justice, Jolly, Ridgeway, and Griffith were principals at UTC. *See* U.S. Dep't of Justice, *Genetic Testing Company and Three Principals Agree To Pay $42.6 Million to Resolve Kickback and Medical Necessity Claims* (Oct. 9, 2019), https://www.justice.gov/usao-edla/pr/genetic-testing-company-and-three-principals-agree-pay-426-million-resolve-kickback-and.
[114] R. Doc. No. 69, at 24.
[115] *See* R. Doc. No. 68, at 23; R. Doc. No. 69, at 23–24; R. Doc. No. 72, at 1.

Medicaid Services retained based on credible allegations of fraud against UTC.[116] Under the global settlement agreement, UTC forfeited any claim to the Suspended Amount, and the Suspended Amount was applied in satisfaction of UTC's portion of the total settlement amount.[117] As to their respective portions of the settlement amount, Jolly agreed to pay $500,000, Griffith agreed to pay $250,000, and Ridgeway agreed to pay $250,000.[118] Griffith, Jolly, and Ridgeway each agreed to pay significant portions of the total settlement amount not already accounted for in suspended Medicare payments to UTC.

The Court finds that joint and several liability is appropriate and that it would not lead to inequitable results. *See Bliss*, 2019 WL 79488 (imposing joint and several liability for attorneys' fees on defendants who settled a *qui tam* action based on the same "covered conduct" in their respective settlement agreements); *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 786 F. Supp. 2d 110, 117 (D.D.C. 2011) (imposing joint and several liability for attorneys' fees under the FCA on defendants who "were all involved in an extensive scheme to rig the bidding process for numerous development projects").

The Court also finds that McNeil and Bergeron are entitled to attorneys' fees, costs, and expenses from UTC and Jolly. As relators who received proceeds from the settlement of an action under the FCA, McNeil and Bergeron are entitled to reasonable attorneys' fees, costs, and expenses, which "shall be awarded against the

---

[116] R. Doc. No. 55-4, at 5.
[117] *Id.* at 6.
[118] *Id.*

defendant." *See* 31 U.S.C. 3730(d)(1). The text of § 3730(d)(1) does not limit a successful relator's entitlement to attorneys' fees, costs, and expenses to the defendant(s) from whom that relator received a share of the settlement proceeds.[119] Rather, § 3730(d)(1) provides that "[a]ny such person" who receives a payment from the proceeds "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). "All such expenses, fees, and costs shall be awarded against the defendant." *Id.*

Jolly, Griffith, Ridgeway, and UTC are defendants to this action. The defendants shall be held jointly and severally liable for Bergeron's attorneys' fees, costs, and expenses.[120] Because McNeil does not seek attorneys' fees, costs, and

---

[119] Jolly argues that "[f]ee-shifting statutes such as 31 USC § 3730 [sic] are designed to award attorney's fees and costs to a 'prevailing party.'" R. Doc. No. 69, at 3. However, § 3730(d)(1), which governs awards to *qui tam* plaintiffs, does not restrict attorneys' fees, costs, and expenses to a "prevailing party," as explained previously. Section 3730(g) allows a "prevailing defendant" to recover fees and costs, but that provision is inapplicable here. Thus, the "prevailing party" determination is inapposite in this case. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (holding that "'prevailing party' precedents . . . do not govern the availability of awards under [29 U.S.C.] § 1132(g)(1) [ ] because this provision does not limit the availability of attorney's fees to the 'prevailing party.'").

[120] Griffith asks the Court that, "should the Court find that McNeil maintains a cognizable claim for attorneys' fees against Griffith," he be permitted to file "a supplemental briefing" reviewing the rates and billings of McNeil's counsel. R. Doc. No. 68, at 6 n.22. The Court declines any request to submit supplemental briefing. All arguments should have been previously presented, and no good cause has been shown for the Court to accept supplements of the same. In addition, allowing supplemental briefing would surely result in a request by opposing counsel to respond.

expenses from Griffith or Ridgeway, only UTC and Jolly shall be jointly and severally liable for McNeil's attorneys' fees, costs, and expenses.

**III**.

Based on the foregoing,

**IT IS ORDERED** that Lawson and Green's motion for attorneys' fees, costs, and expenses and Church's motion for attorneys' fees, costs, and expenses are **DENIED**.

**IT IS FURTHER ORDERED** that McNeil's motion for attorneys' fees, costs, and expenses is **GRANTED IN PART AND DENIED IN PART**. McNeil shall be awarded attorneys' fees in the amount of $48,558.00 and awarded costs and expenses in the amount of $3,194.43. McNeil's attorneys' fees, costs, and expenses shall be paid by Jolly and UTC.

**IT IS FURTHER ORDERED** that Bergeron's motion for attorneys' fees, costs, and expenses is **GRANTED IN PART AND DENIED IN PART**. Bergeron shall be awarded attorneys' fees in the amount of $64,040.00 and awarded costs and expenses in the amount of $1,083.42. Bergeron's attorneys' fees, costs, and expenses shall be paid by Jolly, Griffith, Ridgeway, and UTC.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction over this case to award additional attorneys' fees, costs, and expenses that may be incurred in the future prior to full resolution of this action.

New Orleans, Louisiana, April 3, 2020.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE